## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Maurice L. Ward,                                    Case No. 14-cv-4946 (JRT/TNL)
Living Survivor of (C.S.I.),

                      Petitioner,

v.                                              **REPORT & RECOMMENDATION**

Michelle Smith,
Warden of Stillwater,

                      Respondent.

---

Maurice L. Ward, #233135, MCF-Stillwater, 970 Picket Street, Bayport, MN 55003 (pro se Petitioner); and

Marcy S. Crain, Assistant Anoka County Attorney, Anoka County Government Center, 2100 Third Avenue, Seventh Floor, Anoka, MN 55303 (for Respondent).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on the petition (Pet., ECF No. 1) of Maurice L. Ward, Living Survivor of (C.S.I.),[1] ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Also pending before the Court are Petitioner's Request for an Evidentiary Hearing with His Suggestions in Support (ECF No. 11); Motion Pursuant to Rule 4 to Dismiss Respondent's Untimely Answer (ECF No. 31); and Pursuant to Rule 5d Motion for Production (ECF No. 39).  Respondent has filed an answer, and the issues have been fully briefed by the parties.  (*See* Answer, ECF No. 30.)  This matter has been referred to this Court for a report and recommendation to the Honorable John R. Tunheim, Chief District

---

[1] The acronym "C.S.I." appears to stand for "Chronic Systemic Incarceration."  (Pet'r's Traverse at 1, ECF No. 35.)

Judge for the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

For the reasons stated herein, the Court will recommend that Petitioner's motion to dismiss **BE DENIED AS MOOT**; petition for a writ of habeas corpus **BE DENIED**; request for an evidentiary hearing **BE DENIED**; and motion for production **BE DENIED**.

## I. BACKGROUND

In 2010, Petitioner was convicted of two counts of promoting the prostitution of an individual under the age of 18, Minn. Stat. § 609.322, subd. 1(a)(2), and one count of receiving profits derived from prostitution, Minn. Stat. § 609.322, subd. 1(a)(3). (Resp't's Ex. 2 at 1-2, 4, ECF No. 30-2.[2])  Petitioner's conviction stemmed from "posting pictures and advertising the services of J.P. and B.B.  Both girls were 16 when they began working as prostitutes for [Petitioner] in late 2009."  *State v. Ward*, No. A10-2063, 2011 WL 5829073, at *1 (Minn. Ct. App. Nov. 21, 2011) (*Ward I*), *rev. denied* (Minn. Jan. 17, 2012).  Petitioner was sentenced to concurrent prison terms of 98, 146, and 43 months. (Answer at 1, 13.)

### A. *Ward I*: Direct Appeal

After Petitioner was convicted and sentenced, he filed a direct appeal with the Minnesota Court of Appeals.  *See generally Ward I*, 2011 WL 5829073.  While Petitioner's appellate counsel raised one issue not relevant to the instant petition,

---

[2] Exhibit 2 is the brief filed by Petitioner's appellate counsel in support of Petitioner's direct appeal of his conviction to the Minnesota Court of Appeals.

Petitioner filed a pro se supplemental brief raising several additional arguments. *See id.* at *1-3. (*See also* Resp't's Ex. 3, ECF No. 30-2.[3]) In relevant part, Petitioner challenged "as unconstitutional the district court's refusal to allow him to present a defense of mistake of age, a defense which is specifically denied him by Minn. Stat. § 609.325, subd. 2." *Ward I*, 2011 WL 5829073, at *3; *see* Minn. Stat. § 609.325, subd. 2 ("Consent or mistake as to age shall be no defense to prosecutions under section 609.322 or 609.324."). While the Minnesota Court of Appeals did not expressly use the words "equal protection" when discussing the availability of a mistake-of-age defense, Petitioner framed the issue in terms of equal protection in his pro se supplemental brief. (*See* Resp't's Ex. 3.) The Minnesota Court of Appeals rejected this argument because Petitioner "fail[ed] to identify a vulnerable group which would require a strict-scrutiny review of the state, and he fail[ed] to cite any authority that supports his argument that a strict-liability crime is inherently unconstitutional." *Ward I*, 2011 WL 5829073, at *3. Petitioner's convictions were affirmed. *Id.* Petitioner sought review with the Minnesota Supreme Court, which was denied. (Pet'r's Appx. I at 17-21, ECF No. 9-1.[4])

## B. *Ward II*: First Round of Postconviction Proceedings

Petitioner "filed a petition for postconviction relief in [the state] district court in August 2012," arguing in part "that the promotion-of-prostitution statute violates equal

---

[3] Exhibit 3 is the pro se supplemental brief Petitioner filed in support of his direct appeal.

[4] The Court uses the page number generated by the ECF system as Petitioner's documents are not uniformly paginated and often contain both a typed and handwritten page number, which are not the same. Additionally, Petitioner has submitted two appendices, one with his petition (ECF No. 9-1) and one with his motion for production (ECF No. 40). The Court will refer to these as "Pet'r's Appx. I" and "Pet'r's Appx. II," respectively.

protection." *Ward v. State*, No. A12-1894, 2013 WL 2372177, at *1 (Minn. Ct. App. June 3, 2013) (*Ward II*), *rev. denied* (Minn. Aug. 6, 2013).  Petitioner argued

> that the promotion-of-prostitution statute under which he was convicted, [Minn. Stat. § 609.322, subd. 1(a)(2)], is unconstitutional because while it uses similar language to the statute prohibiting patronizing prostitution, African-Americans are disproportionately convicted of promoting prostitution while Caucasians are more often convicted of patronizing prostitution.  Because promoting prostitution carries more severe penalties than patronizing prostitution, [Petitioner] assert[ed] that this racial disparity shows that the statute violates equal protection.

*Id.* at *2.  "The district court concluded that [Petitioner] was not entitled to an evidentiary hearing and dismissed his petition, finding that his postconviction arguments could have been made in his direct appeal and thus were barred by [Minn. Stat. § 590.01, subd. 1]." *Id.* at *1; *see* Minn. Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence.").

Petitioner appealed the dismissal to the Minnesota Court of Appeals, which affirmed the district court's summary dismissal of the petition.  *See Ward II*, 2013 WL 2372177, at *1-3.  The Minnesota Court of Appeals concluded that Petitioner's equal-protection argument was barred by the "so-called *Knaffla* rule, which states that 'a petition for postconviction relief raising claims that were raised on direct appeal, or were known or should have been known but were not raised at the time of the direct appeal are procedurally barred.'"  *Id.* at *1 (quoting *Andersen v. State*, 830 N.W.2d 1, 8 (Minn. 2013) (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976))); *see id.* at *1 (noting

4

Minn. Stat. § 590.01, subd. 1 "codifies" the *Knaffla* rule).  The Minnesota Court of Appeals noted that Petitioner "raised this equal-protection argument for the first time in his reply brief filed in his direct appeal," which was "presumably [not addressed at that time] because a party may not raise a new issue in a reply brief under the appellate rules." *Id.* at *2 n.1.  The Minnesota Court of Appeals also concluded that neither of the exceptions to *Knaffla* applied because Petitioner's equal-protection claim did not present a novel legal issue and "postconviction relief [wa]s not necessary to satisfy the interests of fairness and justice because the claim [also] lack[ed] substantive merit."  *Id.* at *2.

Addressing the merits of Petitioner's equal-protection claim, the Minnesota Court of Appeals stated that Minn. Stat. § 609.322, subd. 1(a)(2), "does not classify persons based on race" on its face and Petitioner "presented no statistical data or other evidence to support his assertion that the statute disproportionately impacts African Americans or other racial minorities."  *Id.* at *2.  "Because [Petitioner] had not met his burden to show a racially disparate impact, [the appellate court concluded that] his equal-protection argument lacks merit and is barred by *Knaffla*."  *Id.*

Relatedly, Petitioner argued, in part, that the district court "abused its discretion by denying his postconviction petition without ruling on his arguments" because he needed a ruling on his constitutional claims so "he could obtain 'federal review.'"  *Id.* at *3, 3 n.2. Petitioner "assert[ed] that because the [Minnesota Supreme Court] refused to consider his equal-protection argument when it denied his petition for review of his direct appeal, he was denied due process because he cannot bring a writ of habeas corpus in federal court." *Id.* at *3 n.2.  The Minnesota Court of Appeals noted that Petitioner "made some mention

in his postconviction petition that he needed this court to rule on his constitutional claims before he could obtain 'federal review,' but did not argue to the district court that his due-process rights were violated by the failure to make a ruling on his claims." *Id.* Therefore, the Minnesota Court of Appeals concluded, "the due-process issue is waived for purposes of appellate review." *Id.* The Minnesota Court of Appeals additionally commented that, "because the longstanding and well-established *Knaffla* rule precludes a postconviction court from inquiring into and ruling on issues that were known or should have been known at the time of a direct appeal, constitutional or otherwise, . . . . [Petitioner's] argument concerning the district court's failure to address his claims does not warrant relief." *Id.* at *3 (footnote omitted). Petitioner again sought review with the Minnesota Supreme Court, which was denied. (Pet'r's Appx. I at 29.)

### C. *Ward III*: Second Round of Postconviction Proceedings

In 2013, Petitioner filed a second petition for postconviction relief in the state district court. (Resp't's Ex. 11 at 2, ECF No. 30-4.[5])

> In his second postconviction petition, [Petitioner] again raised the issue of equal protection and seemed to argue that his due-process rights were violated by each state court's refusal to rule on his equal-protection argument. Additionally, [Petitioner] alleged that both his trial and appellate counsel were ineffective for failing to raise his equal-protection claim and that his appellate counsel was also ineffective for failing to raise an ineffective-assistance-of-trial-counsel claim.

*Ward v. State*, No. A13-2133, 2014 WL 4175916, at *1 (Minn. Ct. App. Aug. 25, 2014) (*Ward III*). "The district court summarily denied [Petitioner's] second petition without

---

[5] Exhibit 11 is the responsive brief of the State of Minnesota in connection with Petitioner's appeal of the denial of his second petition for postconviction relief.

an evidentiary hearing." *Id.* "In summarily denying [Petitioner's] petition, the district court determined that [Petitioner's] equal-protection and related claims were barred because they could have been raised on direct appeal and had previously been decided by [the Minnesota Court of Appeals]." *Id.* at *2. "The district court also stated that [Petitioner's] ineffective-assistance-of-counsel claims are barred by *Knaffla* because his trial-counsel claim should have been raised on direct appeal and his appellate-counsel claim should have been raised in his first petition for postconviction relief." *Id.* at *2.

Between the denial of the petition and his appeal of that decision, Petitioner "submitted several motions and documents to the [state district] court that related to his petition, as well as a motion to remove the judge for bias."[6] *Id.* at *1. "The chief judge of the tenth judicial district wrote to [Petitioner], explaining that he would not be taking an action on [Petitioner's] motion to remove because there were no issues pending before the court. Additionally, the district court returned various filings to [Petitioner]." *Id.* Petitioner "did not provide proof of service of his notice of appeal with the district court administrator as required." *Id.* at *1 n.1. "The day after [Petitioner] filed his appeal, the district court, seemingly unaware of the appeal, filed another order providing additional detail as to its summary denial of [Petitioner's] petition and denying all of [Petitioner's] subsequent motions." *Id.* at *1 (footnote omitted). "[T]he notice of case filing issued by [the Minnesota Court of Appeals] was received by the district court on the same day that it issued its additional order." *Id.* at *1 n.1.

---

[6] For the reasons discussed in Section III.B.2 *infra*, the timing of the submission of these motions and documents is not entirely clear.

The Minnesota Court of Appeals affirmed the denial of Petitioner's second petition. *Id.* at *4. The Minnesota Court of Appeals stated that, while Petitioner had "submitted additional documentation purportedly supporting his claim"[7] that "the promotion-of-prostitution statute under which he was convicted has a disparate impact because African American men are more likely to be charged under this statute, while Caucasian men are more likely to be charged under the statute prohibiting patronizing prostitution, which has a lesser punishment," the appellate court had already ruled on this issue when Petitioner appealed the denial of his first petition for postconviction relief, and its "previous decision on this issue bars reconsideration of [Petitioner's] equal protection argument under Minn. Stat. § 590.04, subd. 3." *Id.* at *2-3; *see* Minn. Stat. § 590.04, subd. 3 ("The court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the Court of Appeals or the Supreme Court in the same case.").

With respect to Petitioner's claim "that the state courts' refusal to rule on his equal-protection argument is a due-process violation because it prevents him from obtaining federal habeas corpus review," the Minnesota Court of Appeals noted that this claim had also been raised when Petitioner appealed the denial of his first petition for postconviction relief. *Ward III*, 2014 WL 4175916, at *3. The Minnesota Court of Appeals stated that it had determined this claim had been waived during the prior appeal

---

[7] It appears that this additional documentation was a report drafted by Petitioner. (*See* Pet'r's App'x I at 5 ("It should be noted that the report Petitioner references as an 'expert minority report' was drafted by Petitioner.") This "Minority Report" is referred to throughout Petitioner's submissions and is contained in Appendix I. (*See* Pet'r's App'x I at 1-13.)

because Petitioner "fail[ed] to raise it in district court," and the claim "is now barred by *Knaffla* because it was known at the time of [Petitioner's] earlier petition for postconviction relief." *Id.* at *3. While Petitioner argued that the claim was not ripe at the time of his first petition, the Minnesota Court of Appeals "disagree[d]" with Petitioner's "argument that the courts must re-evaluate his equal-protection claim in light of new evidence he has submitted." *Id.* The Minnesota Court of Appeals also concluded that neither *Knaffla* exception applied, noting that Petitioner's "due-process argument is premised on his equal-protection argument, which [it] already considered, and the [Minnesota Supreme Court] declined to review," and the Minnesota Court of Appeals would "not reconsider issues already decided." *Id.*

As for Petitioner's ineffective-assistance-of-counsel claims, the Minnesota Court of Appeals likewise concluded that they were barred by *Knaffla* and neither exception applied. *Id.* at *3-4. The Minnesota Court of Appeals observed that Petitioner's "assertion that his appellate counsel was ineffective for failing to raise an ineffective-assistance-of-trial-counsel claim is an acknowledgement that he knew of his trial-counsel claim at the time of his direct appeal," and, "[d]espite his appellate counsel's refusal to raise this claim, [Petitioner] had a right to file a pro se supplemental brief asserting this issue." *Id.* at *3. The Minnesota Court of Appeals also noted that "[e]ven if the district-court record was insufficient to bring his claim on direct appeal, the appropriate time to do so was in his first petition for postconviction relief." *Id.* Turning to Petitioner's appellate-counsel claim, the Minnesota Court of Appeals observed that this claim stemmed from Petitioner's direct appeal and Petitioner "knew or should have known of

9

the grounds for this claim when he first petitioned for postconviction relief and should have raised this claim at that time." *Id.* at *4.

Lastly, the Minnesota Court of Appeals addressed the documents Petitioner submitted following the denial of his second petition for postconviction relief. *Id.*

> Such documents included an amended witness list, a motion for court-appointed experts, a memorandum of law in support of his motion for an evidentiary hearing, amended findings of fact, and various correspondences. [Petitioner] also moved for removal of the presiding judge and seems to argue that the district court erred by denying his motion to remove. The record shows that a number of documents were returned to [Petitioner] because he submitted them *after the district court denied his second post-conviction petition.* Likewise, the chief judge informed [Petitioner] that no action would be taken because there was nothing pending before the presiding judge, who had already denied his second petition. Because the district court had already dismissed [Petitioner's] petition for postconviction relief, and the documents he submitted thereafter were related to his petition, there was no further relief available to him. The district court did not err by returning additional documents Ward submitted or by denying his subsequent motions.

*Id.* at *4 (emphasis added) (footnote omitted). The Minnesota Court of Appeals noted that, although Petitioner "seems to contend that the denial of his postconviction petition did not occur until November when the district court denied his subsequent motions[,] . . . the record clearly shows that the district court summarily denied his petition in September 2013." *Id.* at *4 n.3. Petitioner again sought review with the Minnesota Supreme Court, which was denied. (Pet'r's Appx. I at 50.)

### D. Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

After the Minnesota Court of Appeals affirmed the denial of his second petition for postconviction relief, Petitioner filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition lists six grounds for relief. As best as the Court is able to tell, Petitioner's habeas corpus claims are as follows:

(1) Minnesota does not have an adequate procedure for pro se criminal defendants to present their claims to the state supreme court, thus preventing exhaustion of state remedies, which violates due process ("due-process claim");

(2) a variant on the claim 1, there is no adequate procedure to present statistical data in support of an equal-protection claim once the equal-protection claim has been deemed meritless ("statistical-data claim");

(3) Minn. Stat. § 609.322, subd. 1(a)(2) (promotion of prostitution of a minor), is unconstitutional because African Americans are disproportionately convicted under this statute compared to Caucasians, who are more often convicted of patronizing prostitution, which carries a lesser penalty ("equal-protection claim");

(4) disallowing a mistake-of-age defense to a charge of promoting the prostitution of a minor under Minn. Stat. § 609.322, subd. 1(a)(2), is a violation of equal protection ("mistake-of-age claim");

(5) trial counsel was ineffective by failing to raise equal-protection claim that African Americans were disproportionately prosecuted as promoters, rather than patrons, of prostitution ("ineffective-assistance-of-trial-counsel claim"); and

(6) denial of access to the court through the failure to file certain documents ("access-to-courts claim").

Additionally, Petitioner has filed motions for an evidentiary hearing, to dismiss Respondent's answer as untimely, and for production.

## II. MOTION TO DISMISS

As a preliminary matter, Petitioner has filed a "Motion Pursuant to Rule 4 to Dismiss Respondent's Untimely Answer" (Mot. to Dismiss, ECF No. 31). In an Order

dated April 9, 2015, the Court ordered Respondent to respond to Petitioner's petition within 30 days from the date of the Order. (ECF No. 22.) On May 8, 2015, Respondent filed a motion for extension of time to respond. (ECF No. 23.) The Court granted Respondent's motion, ordering Respondent to respond to the petition by June 1, 2015. (ECF No. 27.)

Petitioner's motion to dismiss, memorandum, and declaration in support are all dated May 8, 2015. (Mot. to Dismiss at 3; ECF No. 32 at 6; ECF No. 33 at 2.) It appears that Petitioner's motion and Respondent's motion crossed in the mail. In his motion, Petitioner acknowledges that this very thing may have happened:

> Because Petitioner, is unconstitutional [sic] incarcerated, so he is not permitted internet access and unable to receive Respondent's untimely answer via email, that has not been received by U.S. Mail, but in case of a crossing of documents this Motion *should be* **Mooted**, and Petitioner will *reply* to the answer in the time granted by this Court.

(Mot. to Dismiss at 3.) Accordingly, the Court recommends that Petitioner's motion to dismiss be denied as moot.

### III. HABEAS PETITION

"A petitioner in custody by judgment of a state court is entitled to habeas relief only by showing that his detention violates the Constitution, federal law, or treaties of the United States." *Murphy v. King*, 652 F.3d 845, 848 (8th Cir. 2011) (citing 28 U.S.C. § 2254(a)). The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal-court review of habeas corpus petitions filed by state prisoners. *See Hunt v. Houston*, 563 F.3d 695, 702 (8th Cir. 2009). Under AEDPA, a federal court may not

grant habeas corpus relief to a state prisoner unless the relevant state proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *accord Hunt*, 563 F.3d at 702.

### A. Procedurally Defaulted Claims

All but two of Petitioner's claims are barred by the doctrine of procedural default.[8] Under "the doctrine of procedural default, . . . a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)); *accord Hunt*, 563 F.3d at 703 ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement."). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez*, 132 S. Ct. at 1316; *accord Hunt*, 563 F.3d at 703; *see Trevino v.*

---

[8] Respondent has conceded that Petitioner exhausted his state-court remedies. (Answer at 3 ("The issues [Petitioner] raises in his habeas petition were all raised in the state court, . . . and he has exhausted his state remedies.").) Accordingly, the Court moves directly to the issue of procedural default. *See Duvall v. Purkett*, 15 F.3d 745, 746 (8th Cir. 1994) ("With exhaustion waived, we could then deal with the petitioner's procedural default . . . as an issue of federal law, as the district court did here."); *see also Robinson v. Crist*, 278 F.3d 862, 865 (8th Cir. 2002) (citing *Duvall* for proposition that "after state's waiver of exhaustion defense is accepted by the district court, procedural default issue can be addressed").

*Thaler*, 133 S. Ct. 1911, 1917 (2013) ("[Federal habeas corpus] principles have long made clear that a conviction that rests upon a defendant's state law 'procedural default' (for example, the defendant's failure to raise a claim of error at the time or in the place that state law requires), normally rests upon 'an independent and adequate state ground.' And where a conviction rests upon such a ground, a federal habeas court normally cannot consider the defendant's federal constitutional claim." (citation omitted) (quoting *Coleman*, 501 U.S. at 729-30)).

"The doctrine barring procedurally defaulted claims from being heard[, however,] is not without exceptions.  A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[9]  *Martinez*, 132 S. Ct. at 1316; *accord Trevino*, 133 S. Ct. at 1917; *Hunt*, 563 F.3d at 703.

### 1.  Default Under *Knaffla*

"Under Minnesota law, where a defendant took a direct appeal, all claims raised in the direct appeal as well as all claims known but not raised at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." *Murphy*, 652 F.3d at 849 (quotations omitted).  This is known as the *Knaffla* rule. *Andersen*, 830 N.W.2d at 8 ("Under the *Knaffla* rule, a petition for postconviction relief raising claims that were raised on direct appeal, or were known or should have been known but were not raised at the time of the direct appeal, are procedurally barred."

---

[9] Petitioner does not claim that he is innocent of the crimes for which he was convicted and, therefore, the fundamental-miscarriage-of-justice exception does not apply.  *See Murphy*, 652 F.3d at 850 ("To fall within the fundamental-miscarriage-of-justice exception, a habeas petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." (quotation omitted)).

(citing *Knaffla*, 243 N.W.2d at 741)); *accord Ward II*, 2013 WL 2372177, at *1. "There are two exceptions to the *Knaffla* rule: '(1) the claim is novel or (2) the interests of fairness and justice warrant relief.'" *Jones v. Minnesota*, No. 14-cv-1650 (SRN/HB), 2015 WL 672077, at *16 (D. Minn. Feb. 17, 2015) (quoting *Andersen*, 830 N.W.2d at 8)). "When the *Knaffla* rule would bar an individual from raising his claims in state court because he did not raise them previously on direct appeal, those claims are procedurally defaulted in federal court." *Id.*

"The *Knaffla* rule is applicable not only to claims that should have been raised on direct appeal, but also claims that should have been raised in prior post-conviction proceedings." *Loye v. Roy*, No. 11-cv-3715 (ADM/JSM), 2012 WL 435724, at *4 (D. Minn. Jan. 12, 2012), *adopting report and recommendation*, 2012 WL 435304 (D. Minn. Feb. 10, 2012); *accord Ward III*, 2014 WL 4175916, at *2 ("*Knaffla* also bars claims raised or known at the time of an earlier petition for postconviction relief from being considered on subsequent petitions." (citing *Wayne v. State*, 601 N.W.2d 440, 441 (Minn. 1999)). "*Knaffla* is a well-established Minnesota state procedural rule . . . ." *Maxwell v. Gau*, No. 12-cv-1770 (ADM/TNL), 2014 WL 1371912, at *11 (D. Minn. Apr. 8, 2014); *accord Ward II*, 2013 WL 2372177, at *3; *see Loye*, 2012 WL 435724, at *4 ("The *Knaffla* rule has been in effect in Minnesota for more than 35 years, and it has been applied in a myriad of cases.").

Over the course of Petitioner's postconviction proceedings, the Minnesota Court of Appeals denied Claims 1, 2, 3, and 5 all on non-federal, state-procedural grounds. In *Ward II*, the Minnesota Court of Appeals ruled that Petitioner's equal-protection claim

(Claim 3) was barred by *Knaffla* because Petitioner knew about this claim at time of his direct appeal—as evidenced by its inclusion in Petitioner's reply brief.   2013 WL 2372177, at *2.   While the appellate court went on to consider whether the equal-protection claim had any merit in determining whether Petitioner could meet one of the *Knaffla* exceptions, *see id.*, this does not change the fact that the Minnesota Court of Appeals explicitly invoked *Knaffla* as the basis for denying Petitioner's equal-protection claim.   *See Nicklasson v. Roper*, 491 F.3d 830, 839 (8th Cir. 2007) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989), for the proposition that "a state court may address the merits in an alternative holding without fear of federal habeas review when the state court explicitly invokes a state procedural bar as a separate basis for decision").

Similarly, in *Ward III*, the Minnesota Court of Appeals concluded that Petitioner's due-process, statistical-data, and ineffective-assistance-of-trial-counsel claims (Claims 1, 2, and 5, respectively) were barred by *Knaffla* because Petitioner was aware of them at the time of his first postconviction proceeding and failed to raise them.   2014 WL 4175916, at *3-4.   In reaching this conclusion, the Minnesota Court of Appeals noted that Petitioner had attempted to address the due-process issue in *Ward II*, but had not brought the issue before the district court in his first postconviction proceeding.   *Id.* at *3; *see Ward II*, 2013 WL 2372177, at *3 n.2 (Petitioner "did not argue to the district court that his due-process rights were violated by the failure to make a ruling on his claims.   Thus, the due-process issue is waived for purposes of appellate review."). The Minnesota Court of Appeals also noted that Petitioner's due-process and statistical-data claims (which the court considered under a single due-process heading) were premised on the equal-

protection claim that had already been considered and denied review. *Ward III*, 2014 WL 4175916, at *3. The Minnesota Court of Appeals stated that it would "not reconsider issues already decided." *Id.* (citing Minn. R. App. P. 140.01).

As for Petitioner's ineffective-assistance-of-trial-counsel claim, the Minnesota Court of Appeals concluded that, at the latest, Petitioner should have asserted this claim in his first petition for postconviction relief, and therefore it too was barred by *Knaffla*. *Id.* The Minnesota Court of Appeals noted that, "'[w]hen a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred,'" and, "[e]ven if the district-court record was insufficient to bring [the] claim on direct appeal, the appropriate time to do so was in [the] first petition for postconviction relief." *Id.* (quoting *Andersen*, 830 N.W.2d at 10). The Minnesota Court of Appeals observed that Petitioner had based a separate, ineffective-assistance-of-counsel claim (appellate counsel) on the "fail[ure] to raise an ineffective-assistance-of-trial-counsel claim," which demonstrated that Petitioner "knew of his trial-counsel claim at the time of his direct appeal." *Id.* Additionally, the Minnesota Court of Appeals stated that "[d]espite . . . appellate counsel's refusal to raise this claim, [Petitioner] had a right to file a pro se supplemental brief asserting this issue." *Id.* (citing Minn. R. Crim. P. 28.02, subd. 5(17)).

## 2. Cause & Prejudice

Because Claims 1, 2, 3, and 5 have been procedurally defaulted, "federal habeas review by this court is barred unless [Petitioner] can show cause for the default and actual prejudice." *Murphy*, 652 F.3d at 850 (citing *Coleman*, 501 U.S. at 750); *accord Trevino*,

133 S. Ct. at 1917; *Martinez*, 132 S. Ct. at 1316. "In order to satisfy the 'cause' requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner." *Maxwell*, 2014 WL 1371912, at *11 (citing *Coleman*, 501 U.S. at 753). Where a habeas petitioner "has not established cause for the default, the question of prejudice need not be reached." *Murphy*, 652 F.3d at 850; *accord Maxwell*, 2014 WL 1371912, at *11. As best as this Court is able to decipher, Petitioner raises three arguments in an effort to establish cause for his default. The Court will address each in turn.

### a. Denial of Discretionary Review

First, characterizing his due-process claim "not [as] a free-standing independent constitutional claim but [a]s a gateway," (Pet'r's Traverse at 6), Petitioner argues that Minnesota does not have an adequate procedure for pro se prisoners to exhaust their claims fully, (*see* Pet'r's Traverse at 6-7; Pet'r's P. & A. at 9-17, ECF No. 36). Petitioner argues that he was prevented from exhausting his state-court remedies because the Minnesota Supreme Court did not grant discretionary review at any juncture. (*See, e.g.*, Pet'r's P. & A. at 11 ("Petitioner's argument should be construed as a challenge to a deprivation to his right to have his Pro se supplemental arguments accepted by the Minnesota Supreme court to be exhaust [sic] so petitioner many [sic] receive habeas corpus relief in the meaning [sic] 2254(b)."), 12 ("Petitioner rejects Respondent assertion that there is an independent and adequate procedure for exhaustion of Pro se litigants supplemental argument to Minnesota supreme court because Petitioner's motion for *acceptance* of Pro se supplemental arguments . . . was not accepted and denied . . . ,

18

denying petitioner request to exhaust . . . in order to receive relief in the meaning of 2254(b)." (citations omitted)).)

The Court appreciates that Petitioner is trying dutifully to fulfill all of the necessary requirements in order to obtain federal habeas review of his claims, but Petitioner's argument is based on a misunderstanding of the law.  In order to fulfill the exhaustion requirement set forth in 28 U.S.C. § 2254(b)(1)(A) (exhaustion of state-court remedies), "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process' before presenting those issues in an application for habeas relief in federal court."  *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

> The Supreme Court has clarified that in order to invoke "one complete round" of available state court remedies prior to filing for federal habeas corpus relief, a state prisoner must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state.

*Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001) (quoting *O'Sullivan*, 526 U.S. at 845, 847).  "[I]n Minnesota, a state prisoner must fairly present his federal constitutional claims to the Minnesota Supreme Court in order to satisfy the exhaustion-of-state-court-remedies requirement."  *Maxwell*, 2014 WL 1371912, at *9.  Petitioner has done so here by petitioning for discretionary review with the Minnesota Supreme Court following each intermediate appeal.  Petitioner need only fairly present the state courts, including the Minnesota Supreme Court, with an *opportunity* to address his claims.  *See id.* at *8-9.

Accordingly, the mere fact that the Minnesota Supreme Court denied discretionary review does not mean that Petitioner was prevented from exhausting his state-court remedies.[10]   In fact, Respondent has not argued, and has actually *conceded*, that Petitioner has exhausted his state-court remedies.

### b.  Awareness of Claim

Second, Petitioner asserts that his equal-protection claim "was defaulted during the critical stage of trial when conflict of interest—Petitioner could not pay attorney fee[—]prevented the equal protection claim form [sic] being presented and heard during trial proceedings."  (Pet'r's P. & A. at 26; *see* Pet'r's P. & A. at 28.)  In *Ward II*, the Minnesota Court of Appeals concluded that Petitioner's equal-protection was barred by *Knaffla* because Petitioner knew about the claim at the time of his direct appeal and did not properly raise it.  2013 WL 2372177, at *2.  Petitioner's argument—that the "default" occurred at trial—is further evidence that Petitioner was aware of this argument at the time of his direct appeal.  Moreover, in Appendix I, Petitioner includes a letter from the attorney who represented him on his direct appeal.  (Pet'r's Appx. I at 64-65.)  The

---

[10]   Petitioner raises the same argument again as cause for the default of his statistical-data claim.  (*See, e.g.*, Pet'r's P. & A. at 21-24.)  Two additional points bear mentioning.  Arguably, Petitioner's statistical-data claim could be read, as Respondent did, as a challenge to the application of *Knaffla* to bar the presentation of the data allegedly supporting his equal-protection claim.  (*See, e.g.*, Pet. at 21 ("Knaffla [sic] is not a state statutory rule but has been used to consistently bar all claims without an adequate procedure to present on the record equal protection statistical data that is required to provide merit to equal protection claims ruled meritless."), Pet'r's P. & A. at 19 (same).)  To the extent Petitioner is arguing that "the state courts somehow misapplied the *Knaffla* rule, . . . that is not an argument that could be raised and considered here because this Court cannot review and overturn a state court's application of a state procedural rule."  *Loye*, 2012 WL 435724, at *4 n.8.  "It is well settled that '[a] federal court may not re-examine a state court's interpretation and application of state law.'"  *Id.* (alteration in original) (quoting *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994)) (citing cases).  Petitioner "vehemently denies" Respondent's characterization of his statistical-data claim and states that this claim "is a challenge to Rule 10 of the Minnesota Rule of Courts that barred petitioner from presenting statistical data in lower court" and, even if he had the data available at the time of trial, his inability to pay his attorney's fee would have barred him from filing a motion regarding the data.  (Pet'r's P. & A. at 21.)  This appears to be a variant of Petitioner's ineffective-assistance-of-trial-counsel claim.

attorney specifically informed Petitioner that "[a]lthough [counsel] ha[d] chosen not to pursue [certain] or other issues [they] had previously talked about, [Petitioner was] free to do so and should do so if [those issues] are important to [him]."  (Pet'r's App'x I at 65.)  The attorney also informed Petitioner that the issues could be raised "by filing a pro se supplemental brief setting forth any additional issues you want the appellate court to consider."  (Pet'r's App'x I at 65.)  The attorney further informed Petitioner: "Be advised that any issues you want the court to consider, which can be raised based on the existing record, must be raised by you now or they are waived—that is they cannot be brought up in the future."  (Pet'r's App'x I at 65.)  The attorney gave Petitioner a deadline by which he needed to receive any pro se supplemental brief so that he could file it on Petitioner's behalf.  (Pet'r's App'x I at 65.)  Petitioner did, in fact, file such a brief in his direct appeal, but did not include the equal-protection argument.  *See Ward I*, 2011 WL 5829073, at *3.  The basis of Petitioner's equal-protection claim was available to him at the time of his direct appeal and Petitioner did not raise it.  There is "nothing in the record [to] suggest[] that Petitioner's failure to comply with Minnesota's *Knaffla* rule was the result of any 'external impediment.'"  *Loye*, 2012 WL 435724, at *5.

### c.  *Trevino* & *Martinez*

Third, relying on the recent Supreme Court decisions of *Trevino* and *Martinez*, Petitioner contends that the absence of counsel during his first postconviction proceeding is cause for the default of his ineffective-assistance-of-trial-counsel claim.  (*See* Pet'r's Traverse at 8; Pet'r's P. & A. at 32-34.)  In *Martinez*, the Supreme Court held that:

> [w]here, under state law, claims of ineffective assistance of
> trial counsel must be raised in an initial-review collateral
> proceeding, a procedural default will not bar a federal habeas
> court from hearing a substantial claim of ineffective
> assistance at trial if, in the initial-review collateral
> proceeding, *there was no counsel* or counsel in that
> proceeding was ineffective.

132 S. Ct. at 1320 (emphasis added). "As used in *Martinez*, an 'initial-review collateral proceeding' is a proceeding that gives the petitioner the first opportunity 'to raise a claim of ineffective assistance at trial.'" *Delk v. Smith*, No. 13-cv-89 (JRT/SER), 2014 WL 538586, at *14 (D. Minn. Feb. 11, 2014) (quoting 132 S. Ct. at 1315). *Martinez* addressed "an Arizona procedural rule [that] *required* a defendant convicted at trial to raise a claim of ineffective assistance of trial counsel during his first state collateral review proceeding—or lose the claim." *Trevino*, 133 S. Ct. at 1914 (emphasis added).

In *Trevino*, Texas state law "d[id] not on its face require a defendant initially to raise an ineffective-assistance-of-trial counsel claim in a state collateral review proceeding. Rather, th[e] law appears at first glance to permit (but not require) the defendant initially to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1915. Looking at Texas's procedures, the Supreme Court observed that it was "virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct review." *Id.* at 1918 (quotation omitted). Additionally, "Texas courts in effect ha[d] directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than on direct review," with the state's "highest criminal court . . . explicitly stat[ing] that as a general rule the defendant should *not* raise an issue of ineffective assistance of counsel on direct appeal, but rather

in collateral review proceedings." *Id.* at 1919-20.  The Supreme Court held that "the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal.  What the Arizona law prohibited by explicit terms, Texas law precludes as a matter of course." *Id.* at 1921.  Therefore, the Supreme Court held that where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies." *Id.*

"*Martinez* and *Trevino* are of limited relevance here, since the rule in those cases is limited to instances when a state's procedures bar review of a claim of ineffective assistance of counsel at trial (either explicitly, or by making it 'virtually impossible' to raise one) on direct review and requires it to be raised for the first time in a collateral review proceeding." *Castillo-Alvarez v. Smith*, No. 14-cv-542 (JRT/JSM), 2015 WL 6445479, at *7 (D. Minn. Oct. 23, 2015) (citing *Trevino*, 133 S. Ct. at 1914-15). "Minnesota state law does not require that an ineffective-assistance-of-trial-counsel claim be raised only in a collateral—meaning post-conviction—proceeding, as described in *Martinez* and as Arizona requires." *Delk*, 2014 WL 538586, at *14; *accord McClendon v. Minnesota*, No. 13-cv-2368 (PJS/HB), 2014 WL 4722490, at *7 (D. Minn. Sept. 22, 2014) ("*Martinez's* narrow holding does not save Petitioner's claim, however, because there are fundamental differences between Arizona and Minnesota state law. . . . Minnesota, where Petitioner was convicted, has no such prohibition on bringing an

ineffective assistance of counsel claim in a direct appeal."). "To the contrary, individuals *must* directly appeal ineffective assistance of counsel claims that are based solely on the trial record, or the claim is barred by *Knaffla*." *McClendon*, 2014 WL 4722490, at *7. As recently stated by the Minnesota Supreme Court:

> If a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred. If, however, such a claim requires examination of evidence outside the trial record or additional fact-finding by the postconviction court, such a claim is not *Knaffla*-barred because the claim is not based solely on the briefs and trial court transcript.

*Nissalke v. State*, 861 N.W.2d 88, 93 (Minn. 2015) (citations omitted).

Moreover, notwithstanding Petitioner's lack of counsel in his first postconviction proceeding, (Resp't's Ex. 8 at A-5, ECF No. 31-3[11]), there are two additional requirements Petitioner must satisfy to establish cause for his default under *Trevino* and *Martinez*. *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014); *see Trevino*, 133 S. Ct. at 1921; *Martinez*, 132 S. Ct. at 1318, 1320. The ineffective-assistance-of-trial-counsel claim must be "substantial" and the postconviction proceeding in which Petitioner was not represented by counsel "must be the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby*, 766 F.3d at 834 (quoting *Trevino*, 133 S. Ct. at 1918). The Court has serious doubts that Petitioner's first postconviction proceeding was the "initial review proceeding" with respect to his ineffective-assistance-of-trial-counsel claim, especially in light of the reasoning of the

---

[11] Exhibit 8 is the responsive brief and appendix filed by the State in connection with Petitioner's appeal of the denial of his first petition for postconviction relief.

Minnesota Court of Appeals in *Ward III*, namely, Petitioner's "assertion that his appellate counsel was ineffective for failing to raise an ineffective-assistance-of-trial-counsel claim is an acknowledgment that he knew of his trial-counsel claim at the time of his direct appeal" and could have raised the issue in a pro se supplemental brief.   2014 WL 4175916, at *3.   But, even if the ineffective-assistance-of-trial-counsel claim could not have been raised until Petitioner's first postconviction proceeding, the claim must still be substantial.   "A 'substantial' ineffective-assistance claim is one that has some merit." *Dansby*, 766 F.3d at 834 (quoting *Martinez*, 132 S. Ct. at 1318).   The Minnesota Court of Appeals considered Petitioner's ineffective-assistance-of-counsel claim and concluded that it had "no substantive merit."   *Ward III*, 2014 WL 4175916, at *4.   Accordingly, Petitioner cannot invoke *Trevino* and *Martinez* to show cause for the default of his ineffective-assistance-of-trial counsel claim.

Because Petitioner cannot establish cause for the procedural default of Claims 1, 2, 3, and 5, this Court need not reach the question of prejudice.   *Murphy*, 652 F.3d at 850. And, because Petitioner's procedural default of Claims 1, 2, 3, and 5 cannot be excused, these claims cannot be addressed on the merits and must be summarily denied.   *Maxwell*, 2014 WL 1371912, at *12; *see Trevino*, 133 S. Ct. at 1917; *Martinez*, 132 S. Ct. at 1316; *Murphy*, 652 F.3d at 850.

## B.  Remaining Claims

### 1.  Mistake-of-Age Claim (Claim 4)[12]

As stated above, under AEDPA, "an application for a writ of habeas corpus may not be granted unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Litschewski v. Dooley*, 792 F.3d 1012, 1015 (8th Cir. 2015) (quotation omitted); *accord Hunt*, 563 F.3d at 702; *see also* 28 U.S.C. § 2254(d)(1).  "A decision is contrary to federal law 'if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if it confronted facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" *Litschewski*, 792 F.3d at 1015-16 (quoting *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (internal quotation marks omitted)). "A state court 'unreasonably applies clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 2016 (quoting *Davis*, 423 F.3d at 874 (internal quotation marks omitted)).

"The  'question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Broom v. Denney*, 659 F.3d 658, 661 (8th Cir. 2011) (internal quotation marks omitted)); *see White v. Wheeler*, 136 S. Ct. 456, 460

---

[12] While Petitioner asserts that this claim too was procedurally defaulted, this is based on Petitioner's misunderstanding that the Minnesota Supreme Court needed to grant his petition for review in order for default not to occur.  (*See* Pet'r's P. & A. at 35-37, 42-44.)

(2015) (per curiam) ("Th[e Supreme Court], time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aide, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." (quotation omitted)).   An incorrect decision by a state court "is not necessarily unreasonable, and [federal courts] may not grant a writ of habeas corpus unless the state court decision is both wrong and unreasonable." *Hunt*, 563 F.3d at 702 (quotation omitted).   "Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 136 S. Ct. at 460 (quotation omitted); *accord Litschewski*, 792 F.3d at 1016.

"The Fourteenth Amendment prohibits states from denying 'any person within its jurisdiction the equal protection of the laws.'" *Holt v. Howard*, 806 F.3d 1129, 1132 (8th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1).   "Equal protection analysis turns on the classification drawn by the statute in question.   Unless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny." *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999); *see Holt*, 806 F.3d at 1132 ("The Supreme Court has however long held that a classification that does not involve fundamental rights or suspect classes does not violate the equal protection clause 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).

Petitioner's mistake-of-age claim is premised on the idea that promoters and patrons of prostitution are similarly situated individuals.  According to Petitioner, when individuals are charged with these similar crimes, the defense of mistake of age is available to only one (patrons) and not the other (promoters); the potential sentences if convicted are greater in "promoter" cases such as his where the defense is not available; and more African Americans are charged with promotion, again where the mistake-of-age defense is not available and the potential penalties are greater, and more Caucasians are charged as patrons, where the defense is available and the potential penalties are not as great.  Petitioner's argument is fundamentally flawed in several respects.

As the Minnesota Court of Appeals observed, Petitioner "fail[ed] to identify a vulnerable group which would require a strict-scrutiny review of the statute."  *Ward I*, 2011 WL 5829073, at *3.  The promotion statute Petitioner was convicted under, Minn. Stat. § 609.322, does not address a suspect classification; rather, it distinguishes those who promote prostitution from those who hire another individual to engage in sexual contact or penetration (patrons) and those hired to engage in such acts (prostitutes).  *See* Minn. Stat. §§ 609.321, subds. 4 (patron), 7 (promoter), 8 (prostitute), 609.322 (promotion), 609.324 (patrons and prostitutes); *see also State v. Montpetit*, 445 N.W.2d 571, 573 (Minn. Ct. App. 1989) ("We thus conclude that 'patron' includes one who hires a prostitute for oneself, but not one who hires a prostitute for another person."). Promoters of prostitution are not a suspect class.  *See Knapp*, 183 F.3d at 789 ("Suspect classifications include those such as race, alienage, gender, or national origin."); *see also Foster v. City of St. Paul*, No. 09-cv-3553 (JRT/JSM), 837 F. Supp. 2d 1024, 1031 (D.

Minn. 2011) ("The government does not violate equal protection merely because the classifications made by its laws are imperfect, or because in practice a classification results in some inequality." (quotation omitted)); *cf. State v. Kerling*, No. C9-98-1733, 1999 WL 672679, at *4 (Minn. Ct. App. Aug. 31, 1999) (prostitutes not a suspect class).

Moreover, Minnesota law does not treat promoters and patrons of prostitution differently with regard to a mistake-of-age defense. Petitioner asserts that he did not know the ages of J.P. and B.B. and argues that if he had been charged as a patron of prostitution rather than as a promoter, the mistake-of-age defense would have been available to him. Pursuant to Minn. Stat. § 609.325, "mistake as to age shall be no defense to prosecutions under section 609.322 *or* 609.324." Minn. Stat. § 609.325, subd. 2 (emphasis added). Thus, whether Petitioner was charged under section 609.322 (promoter) or section 609.324 (patron), the mistake-of-age defense was not available to him. The affirmative defense section 609.325 makes available is for individuals charged as prostitutes. Minn. Stat. § 609.325, subd. 4 (affirmative defense); *see* Minn. Stat. § 609.324, subds. 6, 7 (prostitution in public places and general prostitution and penalties for prostitutes). And even then, the defense is not one of mistake of age, but a demonstration "by a preponderance of the evidence that the [individual charged] is a labor trafficking victim . . . or a sex trafficking victim . . . and that the [individual] committed the acts underlying the charge as a result of being a labor trafficking or sex trafficking victim." Minn. Stat. § 609.325, subd. 4. Thus, the law treats both promoters and patrons of prostitution equally in this regard—neither is permitted to use mistake of age as a defense.

29

Petitioner complains that the penalties for promoters of prostitution are greater than patrons of prostitution.   Given that there is no suspect class involved, different treatment of promoters and patrons of prostitution "does not violate the equal protection clause 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"   *Holt*, 806 F.3d at 1132 (quoting *Heller*, 509 U.S. at 319-20).   "Rational basis review does not require proof of the legislature's actual motivation, but only that some rational basis exists for the law."   *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985)).   "[A]s long as a plausible reason exists for the classification, the Court's scrutiny must end."   *Knapp*, 183 F.3d at 789 (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993)).   "[T]he prostitution statutes evince a legislative intent to eradicate the furtherance of prostitution . . . ."   *Montpetit*, 445 N.W.2d at 573.   There is a rational basis for giving greater penalties to those who foster prostitution as an ongoing enterprise through activities such as soliciting patrons, providing facilities to aid in prostitution, and managing a prostitution business, *see* Minn. Stat. § 609.321, subd. 7 (listing activities constituting promotion of prostitution), compared to a person who hires a prostitute for him or herself, *see* Minn. Stat. § 609.321, subd. 4 (defining patron).   *See Montpetit*, 445 N.W.2d at 573 ("Certainly the statutory scheme is meant to deter the parasites who further prostitution for profit.").   Because there is a rational basis for the different penalties for promoters and patrons, there is no equal-protection violation.   *See Allen v. Stratton*, 428 F. Supp. 2d 1064, 1073 (C.D. Cal. 2009) (denying habeas corpus relief for alleged equal-protection violation stemming from more serious penalty for "crime of

pimping" than prostitution because pimping statute "discourages persons other than the prostitute from augmenting and expanding a prostitute's operation or increasing the available supply of prostitutes, and punishes more severely those who corrupt others" (citations and quotation omitted)).

In sum, the denial of Petitioner's mistake-of-age claim by the Minnesota Court of Appeals on grounds that promoters of prostitution were not a suspect class was neither contrary to nor involved an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d)(1); *Litschewski*, 792 F.3d at 1015; *Hunt*, 563 F.3d at 702.   Thus, Petitioner is not entitled to a writ of habeas corpus on Claim 4.

## 2.  Access-to-Courts Claim (Claim 6)

While Respondent contends that Petitioner's access-to-courts claim was also procedurally defaulted, Respondent has not identified for this Court what state procedural rule formed the basis of the Minnesota Court of Appeals's denial of this claim.  (*See* Answer at 20.)  The Minnesota Court of Appeals also did not expressly identify a state procedural rule when denying this claim.  *See Ward III*, 2014 WL 4175916, at *4. Because, as noted above, Respondent has conceded that Petitioner has exhausted all of his claims, the Court addresses Petitioner's access-to-courts claim on the merits.

At the outset, the Court notes that Petitioner has had several bites at the proverbial apple to challenge his convictions and sentences.  He filed a direct appeal; petitioned for postconviction relief; appealed the denial of postconviction relief; again petitioned for postconviction relief; and again appealed the denial of such relief.  And, at every opportunity, Petitioner sought discretionary review by the Minnesota Supreme Court.

31

Thus, from a broader perspective, there appears to be nothing impeding Petitioner's access to the state courts.  Turning now to Petitioner's access-to-courts claim, while far from being clear, it appears this claim is based on the failure of the state district court to file certain documents in connection with his second petition for postconviction relief.[13] (*See* Pet. at 51-55; Pet'r's P. & A. at 50-52.)  As described by the Minnesota Court of Appeals, "[s]uch documents included an amended witness list, a motion for court-appointed experts, a memorandum of law in support of his motion for an evidentiary hearing, amended findings of fact, and various correspondences" as well as "mo[tion] for removal of the presiding judge." *Ward III*, 2014 WL 4175916, at *4.  The Minnesota Court of Appeals observed that

> [t]he record shows that a number of documents were returned to [Petitioner] because he submitted them after the district court denied his second post-conviction petition.  Likewise, the chief judge informed [Petitioner] that no action would be taken because there was nothing pending before the presiding judge, who had already denied his second petition.

*Id.*  The Minnesota Court of Appeals held that the state "district court did not err by returning [the] additional documents [Petitioner] submitted or by denying his subsequent motions," reasoning that "[b]ecause the district court had already dismissed [Petitioner's] petition for postconviction relief, and the documents he submitted thereafter were related to his petition, there was no further relief available to him." *Id.*

Petitioner takes issue with the timeline and contends that the documents were mailed on September 12, 2013 and date-stamped as received by the state district court on

---

[13] Yet, at the same time, Petitioner also appears to complain that the state district court did not file certain documents related to his first petition for postconviction relief.  (*See* Pet. at 51-52.)

September 16, and the denial of his second petition for postconviction relief was not until September 23. (Pet'r's P. & A. at 50-51.) In early October 2013, Petitioner received a letter from the chief judge regarding his motion for removal of the district court judge. (Pet'r's P. & A. at 50.) The record before this Court does not contain the date-stamped documents Petitioner contends were returned to him or the letter from the chief judge, although Petitioner has requested that Respondent be ordered to produce the date-stamped documents and the accompanying letters returning those documents to him. (Mot. for Prod. at 2.) *See infra* Section IV. Petitioner has, however, included a notarized certificate of service stating that the documents were mailed from the correctional facility on September 12. (Mot. for Prod. at 24.)

"Inmates have a constitutional right of meaningful access to the courts and the legal system." *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 823 (1977)).

> To state an access to the courts claim, a prisoner must establish that the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a *nonfrivolous and arguably meritorious underlying legal claim*.

*Holt*, 806 F.3d at 1133 (emphasis added) (quotation omitted). Petitioner asserts the return of the documents and misrepresentation of the date the documents "were received . . . nullif[ied] [his] access to [the] appellant [sic] process," (Pet. at 53); the failure to file the returned documents violated his "fundamental right to have documents record [sic]

nullifying both [his] state and federal habeas corpus processes," (Pet'r's P. & A. at 51); and the misrepresentation of facts denied him access to the court, (Pet'r's P. & A. at 51).

Petitioner has not shown that the non-filing of any particular document resulted in actual injury, i.e., the hindrance of a non-frivolous, arguably meritorious claim for habeas corpus relief.  As stated above, four of Petitioner's claims (Claims 1, 2, 3, and 5) were procedurally defaulted and Petitioner has not shown cause for the default.  A fifth claim (Claim 4) fails on the merits because the state court's determination was not contrary to nor involved an unreasonable application of clearly established law.

Moreover, as the Minnesota Court of Appeals noted, the day after Petitioner filed his notice of appeal with respect to the denial of the second petition for postconviction relief, the state district court—unaware of the appeal as Petitioner "did not provide proof of service of his notice of appeal with the district court administrator as required"— issued an order "providing additional detail as to its summary denial of [Petitioner's] petition and denying all of [Petitioner's] subsequent motions."  *Ward III*, 2014 WL 4175916, at *1 & n.1.  In this order, the state district court noted that it had "never previously seen a Motion to Remove in Petitioner's voluminous pleadings" while acknowledging that such a motion had been filed with the chief judge.  (Resp't's Ex. 11 at A-18.)  The state district court noted that Petitioner had not been given leave pursuant to Minn. Stat. § 590.03 to file any additional pleadings beyond the petition.  (Resp't's Ex. 11 at A-19.)  *See* Minn. Stat. § 590.03 ("No further pleadings are necessary except as the court may order.").  Additionally, the state district court stated:

> [T]his Court has already ruled on Petitioner's second postconviction relief petition finding that his claims are barred by Minn. Stat. § 590.01, Subd. 1(2) and *Knaffla*. The identical issues and decision were previously affirmed by the Court of Appeals in [*Ward II*] and the Minnesota Supreme Court denied review. Higher courts than this Court have rejected Petitioner's arguments. To bring the same arguments back to the trial court is treating the trial court as having authority to review decisions made by Minnesota Appellate Courts. Unless directed otherwise on remand by the Minnesota Court of Appeals or the Minnesota Supreme Court, this Court is without authority to grant Petitioner a hearing on his claims that the sentence he received violates equal protection. Repeated and continuous filings of documents at the district court level will not change what has already occurred or result in Petitioner receiving an evidentiary hearing.

(Resp't's Ex. 11 at A-19.)  Notably, in its responsive brief on appeal, the State pointed out that, while Petitioner "argues that the postconviction court abused its authority when it directed the [state district court] [a]dministrator's office to stop filing the motions and other pleadings he sought to file after his second postconviction petition was filed," these "documents were apparently filed, however, because they are part of the court record." (Resp't's Ex. 11 at 17.)

In order for a petition for habeas corpus to be granted based on an erroneous factual finding, the state court's proceedings must "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Factual findings by the state courts, both trial and appellate, are presumed correct unless the petitioner "rebuts that presumption with clear and convincing evidence."  *Weaver v. Bowersox*, 241 F.3d 1024, 1030-31 (8th Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).  Thus, "[a]n unreasonable

determination of the facts in light of the evidence presented in state court proceedings occurs only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *White*, 757 F.3d at 755-56 (quotation omitted). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030; *accord White*, 757 F.3d at 756 ("A petitioner must also demonstrate that the state court's determination of facts was unreasonable." (quotation omitted)).

The Court has serious reservations that Petitioner has shown by clear and convincing evidence that the state courts erroneously determined that his motions and additional documents did not come to the attention of the state district court until after the denial of his second petition for postconviction relief. But even assuming the state courts erred in this factual determination, Petitioner has not shown that this determination was unreasonable in light of the record. *See Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001) ("There is sufficient record evidence to support such a finding and, thus, it would not constitute an unreasonable determination of the facts in light of the evidence presented at trial.").

In sum, Petitioner has indefatigably pursued variants of his proffered grounds for postconviction relief on at least two occasions through the state district and appellate courts. That Petitioner has not been successful in pursuing the relief he seeks does not mean that his right to access the courts has been infringed. "[T]he Supreme Court has pointed out that the right to access the courts does not include the right to '*litigate*

*effectively* once in court.'"  *Holt*, 806 F.3d at 1133 (quoting *Lewis*, 518 U.S. at 354).  For the reasons stated above, Petitioner has not shown that he was prevented from pursuing a non-frivolous, arguably meritorious claim for habeas relief or that the state courts made an unreasonable determination of fact based on the record.  Therefore, Petitioner is not entitled to a writ of habeas corpus on Claim 6.

## IV. MOTION FOR PRODUCTION

In addition, Petitioner has filed a motion requesting that the Court order Respondent to file certain enumerated documents (1-10) that Petitioner asserts are "relevant" to these proceedings and have not been produced pursuant to Rule 5(d) of the Rules Governing Section 2254 Cases in the United States District Courts.  (Mot. for Prod. at 1-2.)  Petitioner asserts that these documents are needed "so this Court is provided with all additional relevant facts omitted by [R]espondent and so Petitioner my [sic] adequately rebut Respondent [sic] defense of procedural bar."  (Mot. for Prod. at 3.)

Rule 5 requires the Respondent to file along with the answer certain briefs of the petitioner and "the prosecution" in connection with state appellate and postconviction proceedings and "the opinions and dispositive orders of the appellate court relating to the conviction or sentence."  Three of the items requested by Petitioner relate to appellate proceedings: a motion for acceptance of a pro se petition for review by the Minnesota Supreme Court (1); the Minnesota Supreme Court's order subsequently denying that motion (2); and an order from the Minnesota Court of Appeals denying a petition for a writ of mandamus (9).  While these documents were not included with Respondent's Answer, Petitioner included them (and sometimes more than once) in the appendices he

filed with this Court. (Pet'r's Appx. I at 17-19; Pet'r's Appx. II at 3-6.) Given that these documents are in the record, there is no reason to require Respondent to file them "again."

Petitioner also requests the production of the state district court's orders with respect to his second petition for postconviction relief (3, 4). Putting aside for a moment whether these documents fall within the purview of Rule 5, the documents were included by Respondent as part of Exhibit 11, (Resp't's Ex. 11 at A-5-6, A-12-20), and Petitioner also included them (again, sometimes more than once) in the appendices he filed with this Court, (Pet'r's Appx. I at 23-24, 31-39; Pet'r's App'x II at 7-8, 9-17). Given that these documents too are in the record, there is no reason to require Respondent to file them "again."

The remaining documents consist of trial transcripts (5, 6, and 7) and documents related to Petitioner's claim that he was denied access to the courts (letters returning documents (8) and the envelopes containing the documents that were subsequently returned (10)). Respondent is not required to produce the requested trial transcripts under Rule 5(d). And Petitioner has not shown good cause for their production under Rule 6(a). *See Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) ("The good cause that authorizes discovery under Rule 6(a) requires a showing that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to habeas relief." (quotation omitted)).

According to Petitioner, the documents related to his access-to-the-courts claim were included in the appendix of his principal brief submitted in *Ward III*, the appeal of

the denial of his second petition for postconviction relief.   (Mot. for Prod. at 2.) Respondent's Exhibit 10 contains Petitioner's principal brief and addendum, but, for reasons unknown, the appendix does not appear to be attached.   (Resp't's Ex. 10, ECF No. 30-4.)   In any event, the production of these documents is not required for Petitioner to establish that his access-to-courts claim was not procedurally barred because the Court has not concluded that it was and, for the reasons stated above, the claim fails. Accordingly, the Court recommends that Petitioner's motion for production be denied.

## V. MOTION FOR EVIDENTIARY HEARING

Petitioner has also filed a separate motion requesting an evidentiary hearing on Claims 5 and 6, "Petitioner's Request for an Evidentiary Hearing with His Suggestions in Support."   An evidentiary hearing is not "'warranted if the petitioner's claims are procedurally barred or are without merit.'"   *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) (quoting *Reese v. Delo*, 94 F.3d 1177, 1186 (8th Cir. 1996)).   For the reasons stated above, Claim 5 has been procedurally defaulted and Claim 6 is without merit. Accordingly, an evidentiary hearing is not warranted.   Therefore, the Court recommends that Petitioner's motion for an evidentiary hearing be denied.

## VI. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").   *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).   A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Langley v. Norris*, 465 F.3d 861, 862-63 (8th Cir. 2006) ("distill[ing]" three rules from *Slack* in considering the appropriateness of a COA: "1) if the claim is clearly procedurally defaulted, the [COA] should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the [COA] should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the [COA] should be granted.").  As explained above, the claims raised by Petitioner are largely procedurally barred and those that are not are without merit.  For purposes of appeal under 28 U.S.C. § 2253, the Court concludes that it is unlikely that reasonable jurists would find that Petitioner should succeed on any of the claims, or that some other court would decide this petition differently. The Court therefore recommends that a COA not issue.

## VII. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person Under State Custody (ECF No. 1) **BE DENIED**.

2. Petitioner's Request for an Evidentiary Hearing with His Suggestions in Support (ECF No. 11) **BE DENIED**.

3. Petitioner's Motion Pursuant to Rule 4 to Dismiss Respondent's Untimely Answer (ECF No. 31) **BE DENIED AS MOOT**.

4. Petitioner's Pursuant to Rule 5d Motion for Production (ECF No. 39) **BE DENIED**.

5.  This action **BE DISMISSED WITH PREJUDICE**.

6.  Petitioner should **NOT BE GRANTED** a COA.


Date:  January _____29_____, 2016                    _____*s/ Tony N. Leung*_____
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *Ward v. Smith*
                                                    Case No. 14-cv-4946 (JRT/TNL)


## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.